UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| INTERNATIONAL PAVING CORP.;<br>SEEKONK ASPHALT CORP.; and<br>45 INDUSTRIAL, LLC<br>Plaintiffs,<br><br>v.<br><br>THE TOWN OF SEEKONK By and Through its<br>BOARD OF SELECTMEN and BOARD OF HEALTH;<br>BRUCE HOCH, In his capacity as a Member of the<br>Seekonk Planning Board; JOHN DOES 1-10,<br>JANE ROES 1-10 and XYZ CORPORATIONS 1-10<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    JURY TRIAL DEMANDED<br><br>C.A. No. |

## COMPLAINT

## INTRODUCTION

The Plaintiffs, International Paving Corp., Seekonk Asphalt Corp. and 45 Industrial, LLC (hereinafter "IPC", "SAC" and "45 Industrial" or collectively the "Plaintiffs") have filed the instant case to seek damages resulting from deprivations of their respective Constitutional rights through 42 U.S.C. § 1983, including the rights of petition and speech protected under the 1st Amendment to the Constitution, and due process rights protected under the 5th and 14th Amendments to the Constitution. In the within action, the Plaintiffs seek damages resulting from the Town of Seekonk, its Board of Selectmen, Board of Health and Planning Board Member, Bruce Hoch's retaliatory crusade pursued against the Plaintiffs with regard to Plaintiffs' efforts to procure permits for an asphalt manufacturing and processing plant to be located on 45 Industrial's property in Seekonk.

## PARTIES

1.　　　Plaintiff, 45 Industrial, LLC is a Massachusetts limited liability company with its principal place of business located at 45 Industrial Court, Seekonk, MA (hereinafter "45 Industrial").

2.　　　Plaintiff, International Paving Corp. is a Rhode Island corporation registered to conduct business as a foreign corporation in Massachusetts and has a principal place of business located in West Warwick, R.I. (hereinafter "IPC").

3.　　　Plaintiff, Seekonk Asphalt Corp. is a Massachusetts corporation with its principal place of business located at 45 Industrial Court, Seekonk, MA (hereinafter "SAC" and together with IPC and 45 Industrial, the "Plaintiffs").

4.　　　Defendant, the Town of Seekonk by and through its Board and Selectmen and Board of Health is a municipality and governmental body corporate with principal offices located at 100 Peck Street, Seekonk, MA (hereinafter the "Town," "BOS," and/or "BOH").

5.　　　Defendant, Bruce Hoch (hereinafter "Hoch") is a member of the Town of Seekonk's Planning Board (hereinafter the "Planning Board") and is being sued in that capacity (Hoch together with the Town, the BOS and/or the BOH may collectively be referred to as "Defendant").

6.　　　Defendants, John Doe 1-10, Jane Roe 1-10 and XYZ Corporation(s) 1-10 are a person or persons whose identit(ies) is/are currently unknown to Plaintiffs yet who, upon information and belief, have aided, assisted, and/or conspired with the other above-named Defendant(s) with respect to the Constitutionally and/or legally violative conduct described in this Complaint.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, 28 U.S.C. § 2201 and 42 U.S.C. § 1983.

8.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(1) because Defendant(s) are a Massachusetts governmental entity and, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to Plaintiffs' claims occurred in this jurisdiction.

## FACTUAL BACKGROUND

**Background:**

9.      IPC is a family owned and operated roadway and sidewalk paving and construction company operating in Rhode Island and Massachusetts.

10.      In or about December 2019, the principals of IPC entered executed a purchase and sales agreement to purchase certain property located at 45 Industrial Court, Seekonk, MA for the sum of One Million One Hundred Fifty Thousand ($1,150,000) Dollars (hereinafter the "Property").

11.      The Property is 4.81 acres and is located in the Industrial Zoning District pursuant to the Seekonk Zoning Bylaws and Zoning Map.

12.      The Property was previously utilized as an auto body shop and auto salvage yard.

13.      IPC's principals closed on the Property in Fall 2020 and thereafter assigned title to 45 Industrial, which is the current record owner.

14.      At all times material hereto, it was Plaintiffs' intention to seek to permit, construct and operate an asphalt manufacturing and processing plant on the Property (hereinafter the "Project").

15.     At the time of purchase and until the Spring of 2021, Seekonk's Zoning Bylaws permitted the operation of all manufacturing and processing facilities by right in the Industrial Zoning District.

16.     Once the Project was fully permitted, it was Plaintiffs' intention to have IPC and SAC operate the facility on the Property.

17.     As required by Section 2.8 of the Town's Zoning Bylaw, 45 Industrial and IPC made proper application to the Planning Board for Site Plan Review of the Project in September 2020.

18.     The Planning Board held several hearings on the Project between October 13, 2020-January 12, 2021, including a public hearing where abutting property owners were provided written notice and an opportunity to be heard.

19.     At the conclusion of the January 12, 2021 public hearing on the Project, Planning Board Member Hoch moved to deny the Project. His Motion did not receive a second and thus failed.

20.     Thereafter, the Chairman of the Planning Board made a Motion to approve the Site Plan for the Project.

21.     On January 12, 2021, the Planning Board voted 6-1 to issue Site Plan Review approval, with the only member voting in the negative being Hoch.

22.     The Planning Board issued its written decision on January 29, 2021.

23.     The Project spurred Townwide opposition residents, members of the general public in neighboring communities, as well as many of Seekonk's municipal officials.

24.     Members of the public created a large social media presence via Facebook Group called "Stop the Seekonk Asphalt Plant" that waged an online and public campaign in opposition to the Project.

25.     Many municipal officials, including elected officials in Seekonk have appeared on social media, including the Stop the Seekonk Asphalt Plant Facebook Group and have voiced vehement opposition to the Project.

26.     At all times material hereto, four of the five members of the BOS have been members of the "Stop the Seekonk Asphalt Plant" Facebook Group.

27.     BOH Member, Dr. Corbin is a member of the "Stop the Seekonk Asphalt Plant" Facebook Group.

28.     Dr. Corbin directly colluded with the BOS and Town's Administration to stop the Project, which eventually culminated in him making the Motion to Approve the BOH's Noisome Trade Regulation, discussed *infra*.

29.     Hoch's wife is a member of the "Stop the Seekonk Asphalt Plant" Facebook Group.

30.     Other members of the "Stop the Seekonk Asphalt Plant" Facebook Group have repeatedly 'thanked' Hoch for his efforts to block the Project and have referred to him as their "advocate."

31.     Prior to the Plaintiffs appearing before the Planning Board for related proceedings concerning the Project in January 2022, Hoch posted to the "Stop the Seekonk Asphalt Plant" Facebook Group page encouraging its members to appear at that Planning Board meeting in order to "let their voices be heard" despite the fact that the then pending proceedings did not involve a public hearing.

32.     When Plaintiffs' Counsel requested that Hoch recuse himself from those Planning Board proceedings, he refused to do so.

33.     The Plaintiffs' January 2022 request was denied by the Planning Board, with Hoch making the Motion to Deny.

34.     Since the issuance of January 2021 Site Plan Review approval by the Planning Board, the Plaintiffs' various expert consultants have been diligently pursuing the environmental permits from the Massachusetts Department of Environmental Protection (hereinafter the "MassDEP") required for the Project.

35.     Following proper application to the Planning Board by 45 Industrial, the Planning Board endorsed an ANR (Approval Not Required) Plan for the Property on February 9, 2021 pursuant to M.G.L. c. 41 § 81P.

36.     By virtue of the Planning Board's endorsement of the ANR Plan, Plaintiffs received the benefit of a zoning 'use' freeze pursuant to M.G.L. c. 40A § 6 for a period of three (3) years.

37.     Having realized the inability to preclude the Project by way of zoning, the Town, through its BOH, BOS and Administration confederated and conspired to retaliate against Plaintiffs by enacting bylaws and regulations as a 'work around' to the Town's Zoning Bylaws in order to prohibit Plaintiffs' lawful use of the Property for the Project and to retaliate against Plaintiffs for exercising their Constitutional rights in furtherance thereof.

38.     Said actions by the Town were in retaliation for Plaintiffs' exercise of its right to free speech and to petition the Town of Seekonk's Planning Board as well as the MassDEP for the permits required to construct and operate the Project.

39.    The Town's actions were politically motivated and intended to shield certain elected and appointed individuals from 'bad political PR', at the direct expense of Plaintiffs and their Property rights.

40.    For example, on January 23, 2021, Selectman Andrade emailed the Chairman of the BOS as follows regarding the Project:

> "Just an idea – we get blasted all the time for doing to much or not doing enough. This time I think its worth the fight. Let's bring health, planning and conservation to the next meeting (or an earlier emergency one next week) and lay down expectations about actions on the plant."

41.    On January 25, 2021, Selectman Andrade issued the following email to the Chairman of the BOS:

> "Another thought- Maybe [we] (*sic*) send invitation out to abutting town officials (Barrington, Rehoboth, EP) to attend our meeting and ask them if they would join forces on any legal challenges. Obviously I would ask the question before hand so that they are T'd up".

42.    On January 25, 2021, Selectman Petronio emailed the Chairman of the BOS passing along a complaint made by one of the abutters to the Property and stated as follows:

> "another email on the asphalt plant… This one seems to be an actual resident. They are piling up.  It seems very plain to me that this is a bad idea – nevermind the bad PR associated with it. I am against this and would like to know if we need to 'rezone' or 'redefine' our industrial zones as only 'light' industrial areas – especially considering that farmland is light industry and that all of our zones should have 'inherited' that type of classification."

43.    On February 2, 2021, Selectman Petronio emailed the Town Administrator and Chairman of the BOS, in relevant part, as follows:

> "Did the planning board receive letters from concerned citizens BEFORE they made a ruling? Words mean things and I want to make sure we understand what came first.  Misinformation will make this PR disaster even worse."

**BOH'S Noisome Trade Regulation:**

44.     The BOS scheduled a meeting on February 3, 2021 to discuss the Project.

45.     The Plaintiffs were not invited to or notified of this meeting or the BOS's intention to discuss the Project that evening.

46.     Prior to that meeting, the Town Administrator issued the following email to the Chairman of the BOS, which states in relevant part:

> "Justin, Below are questions that I asked Jenn [the Conservation Agent] to put together to help drive the conversation and to ping follow up questions for Planning so that it seems like the discussion with planning happens organically and doesn't come off as targeted toward them."

47.     During the February 3, 2021 meeting, the BOS discussed an agenda item entitled "Discussion of Proposed Asphalt & Concrete Plant at 45 Industrial Court."

48.     During that discussion, members of the BOS raised "concerns" regarding the Project.

49.     During that meeting, the BOS was informed by the Town Planner that Site Plan Review issued by the Planning Board and that the use proposed by the Project was permitted by right under Seekonk's Zoning Bylaws.

50.     The then Chairman of the BOH was in attendance at the BOS meeting on February 2, 2021.

51.     The BOS inquired with the BOH if that Board could get involved in attempting to block the Project.

52.     The Charmain of the BOH stated that the only way that the BOH would get involved is if a "complaint" was filed with the BOH.

53.     In response, Selectman Andrade immediately made a complaint to the BOH but did so purportedly "as a resident" (while contemporaneously presiding over the BOS's meeting) and demanded that the BOH "take any necessary steps to stop [the Project]".

54.     Notwithstanding his prior statements reflected in Paragraph 52 above, the BOH Chairman responded to Selectman Andrade by stating that he had already directed the Town's Health Agent to "do whatever possible to halt this plant."

55.     For the duration of the remainder of the February 3, 2021 meeting, the BOS, various Town Department Heads and members of other Town Boards discussed potential strategies for stopping the Project, in light of the fact that it was properly zoned.

56.     Members of the BOS stated that they would use every resource that the Town had to combat the Project.

57.     Members of the BOS encouraged Town residents to try and raise money themselves to combat the Project.

58.     At least one member of the BOS argued that the Town should not be limited to 'strictly interpreting or understanding' its own regulations and bylaws if doing so would impede the Town's ability to combat the Project.

59.     At least one member of the BOS argued that the Town could effectively disregard the Zoning Bylaws because the Project would allegedly impact the 'health and safety of residents'.

60.     One member of the BOS directed the Town Administrator to send a letter to neighboring communities in order to "raise funds to fight the cause."

61.     The next morning, the Chairman of the BOH emailed the Town Administrator the following:

9

> "as per the meeting last night, I would like to inquire with legal again to see if [*sic*] there is a way for the board of health to intervene with the planned construction of the asphalt plant, however, i believe as you would agree, it will prove to be unsuccessful. Let me know if the board of health may be of further assistance."

62.     As a direct and proximate result of the BOS's February 3, 2021 meeting, the BOH convened and held discussion on the following topic "Discussion and any other action regarding the proposed Asphalt Plant at 45 Industrial Way," during its February 24, 2021 meeting.

63.     During that meeting, the then Chairman of the BOH stated that he had been in contact with the Town Administrator about their ability to enact a noisome trade regulation which would ban hot asphalt mix plants in Town.

64.     Upon information and belief, over the next two (2) months, the BOH, Health Department, BOS and the Town's Administration worked in concert to craft a noisome trade regulation to purportedly ban asphalt manufacturing and processing in Seekonk immediately.

65.     Plaintiffs' ANR Application for the Property was scheduled for consideration by the Planning Board at its February 9, 2021 Meeting.

66.     At 11:01 A.M. on February 4, 2021, Planning Board Member Hoch emailed Selectman Andrade as follows:

> "During last night BOS meeting I learned that the applicant for the proposed asphalt plan has filed for an ANR plan with the Town Planner. Mr. Sullivan had stated that he did not know the motivation for this. Let me theorize as to a possible motivation for this. As we know this type of a proposed project is a long process. Perhaps, in order to protect the zoning and use they propose from any in the zoning bylaws at town meeting. The ANR handbook on page 52 (Zoning Protection for ANR Plans) states, "approval not required plans obtain three year zoning protection period" …….. "An approval not required plan protects the land shown on the plan from future zoning changes related to use"."

67.     Upon information and belief, Hoch and Andrade immediately spoke on the phone concerning the Project and the potential impacts that ANR endorsement would have.

68.     At 11:14 A.M. on February 4, 2021, Selectman Andrade responded to Hoch's email, in relevant part, as follows:

> "Bruce, Thank you for sending this. Sorry if it appeared as if I was rushing the phone call […] I will keep your name out of any follow up from here on out."

69.     On February 7, 2021, the Chairman of the BOS responded to an email from a member of the public concerning the Project stating, in relevant part, as follows:

> "We are working hard behind the scenes to find any options we could have in this fight."

70.     On February 7, 2021, the Chairman of the BOS responded to another citizen's email concerning the Project by stating, in relevant part:

> "We are doing everything we can within our local and State laws to stop construction of the asphalt plant."

71.     On April 2, 2021, Selectman Zorra responded to an email from a concerned citizen and stated, in relevant part, as follows:

> "I don't support the asphalt plant being built. … We are limited on what we can do as a board of selectmen but rest assured I'm standing with the rest of the residents and surrounding community members to offer my support and help with anything that needs to help. … I also posted a video in the "stop the asphalt Facebook group"."

72.     The video that Selectman Zorra refers to in the above email was filmed on March 28, 2021 and posted by him to the "Stop the Seekonk Asphalt Plant" Facebook page.

73.     Selectman Zorra's video was made in support of his reelection campaign, which was slated for vote during the Townwide election on April 5, 2021.

74.     The below is a screenshot of a portion of the video:



75.     In the video, Selectman Zorra is shown standing in front of the Property surrounded by his reelection campaign banner and the Stop the Seekonk Asphalt Plant's banner/signage.

76.     During the video Selectman Zorra states that he is against the asphalt plant, makes wild and unfounded allegations about 'potential harm' that would be caused to Seekonk by the plant and promises to do 'everything in his power to stop the plant' if elected.

77.     On April 2, 2021, Selectman Zorra posted another campaign video to social media, which provided, in relevant part, the below (as screenshotted):



78.     The BOH conducted a hearing on April 21, 2021 on the subject of whether hot mix asphalt plants should be deemed a 'Noisome Trade' in the Town of Seekonk pursuant to M.G.L. c. 111 § 143.

79.     The BOH's Noisome Trade hearings were the sole and proximate result of, and in response to, the Project.

80.     Plaintiffs were not provided notice of the hearing and only learned of it through social media postings.

81.     At the conclusion of the April 21, 2021 BOH Noisome Trade hearing, the BOH voted to (1) deem hot mix asphalt plants to be a Noisome Trade in Seekonk, and (2) to ban the operation of hot mix asphalt plants in Seekonk (hereinafter the "Noisome Trade Regulation").

82.     The BOH's conduct was a preemptive action by the Town to try and preclude the lawful completion of the Project as well as in retaliation for Plaintiffs' lawful exercise of their constitutionally protected free speech and petitioning rights.

83.     The BOH worked under the directive and at the direction of the BOS and/or the Town's Administration in enacting the Noisome Trade Regulation.

84.     The Noisome Trade Regulation was enacted by the BOH before the Project was built and in fact, before the Project had procured the environmental permits from the MassDEP required to operate the facility.

85.     The BOH enacted the Noisome Trade Regulation purportedly based upon 'scientific studies' and 'expert testimony' that allegedly explained the deleterious impacts that asphalt plants can have on the surrounding community.

86.     The BOH purported to accept these materials and testimony as 'fact' when rendering its Noisome Trade Decision.

87.     However, the materials and testimony relied upon by the BOH were not reliable sources but were merely pretextual in nature so as to give the appearance that its foregone decision to approve the Noisome Trade Regulation was well grounded in fact and law.

88.     For example, a review of the materials cited by the BOH in the record of the Noisome Trade proceedings reveal that the alleged 'studies' were excerpts from out-of-state studies, taken out of context and submitted by unqualified members of the public who had simply copied and pasted materials from various online sources in order to support their objections to the Project.

89.     Most, if not all of the so-called contributors who provided the BOH information were members of the Stop the Seekonk Asphalt Plant Group.

90.     None of the so-called 'experts' relied upon by the BOH were qualified to testify as to the effect that the asphalt plant would have on environmental conditions in Seekonk but were

14

instead a mixture of medical professionals (including oncologists, psychiatrists and pediatricians), most of whom had appeared to oppose the Project.

91.     Upon information and belief, prior to the April 21, 2021 Noisome Trade hearing, before any testimony was taken and/or any evidence presented, the BOH was provided with a draft motion to approve the Noisome Trade Regulation, which motion incorporated several pages of detailed 'findings' concerning "emissions," "possible negative health impacts," "noisome and injurious odors" concerning asphalt plants, and included purported citations to so-called 'studies and findings' conducted by, *inter alia*, out-of-state medical professionals and environmental activist organizations.

92.     These facts alone demonstrate that the BOH's approval of the Noisome Trade Regulation was never intended to be based upon objective studies or evidence, but instead was a preordained decision of the BOH that was expressly designed to retaliate against Plaintiffs for exercising their constitutional rights and to strip them of property rights that they had lawfully obtained concerning the Project.

**The BOS's Amendment to the Town's General Bylaws.**

93.     Contemporaneous with the BOH's enactment of the Noisome Trade Regulation, the BOS went on the attack and prepared an amendment to a provision of the Town's General Bylaws governing the import, transport and placement of earth materials on property located in Seekonk.

94.     The BOS prepared amendments to Category 17B of the Town's General Bylaws in order to provide the BOS plenary authority to effectively deprive Plaintiffs of their ability to import and utilize the earth materials necessary to manufacture asphalt.

95.     The amendments to Category 17B of the General Bylaws were prepared in direct response to the Project and in retaliation of Plaintiff's exercise of the constitutionally protected rights.

96.     On February 27, 2021, the Town Administrator emailed the members of the BOS as follows:

> "Attached are the amended changes for Category 17A and 17B of the general bylaws. This is in response to the asphalt plant. The amendments would require the plant to obtain a yearly permit from the Board in order to import the material that they would need to produce asphalt."

97.     The Chairman of the BOS responded as follows,

> "Nice work Shawn. Kudos to you for identifying this to start. Let's hope this works and the AG approves after passage. Thank the attorneys for their efforts."

98.     The amendments to Category 17B of the General Bylaws were prepared by the Town's Administration and were first publicly raised by the BOS at the March 3, 2021 BOS hearing, which was conducted by Zoom.

99.     During that meeting, the Chairman of the BOS briefly presented the amendment to Category 17B.

100.    The Chairman of the BOS did not solicit public comment and asked for a motion on the amendment.

101.    A Motion to Approve the amendments to Category 17B of the General Bylaws was made, seconded and passed unanimously.

102.    The totality of the public discourse by the BOS on amending Category 17B took fifty two (52) seconds.

103.    Upon information and belief, the BOS purposefully conducted the process by Zoom, without deliberation or even so much as a detailed presentation of the amended General

Bylaw in order to conceal the amendment as much as possible and to eliminate public discourse concerning the same.

104.   The BOS's decision to approve the amendment to Category 17B was predetermined and constituted pretextual collateral attack on Plaintiffs in retaliation for them exercising their constitutional rights.

105.   The amendment to Category 17B was placed upon the Spring 2021 Town Meeting Warrant and passed at the Spring 2021 Town Meeting.

106.   Prior to the Spring 2021 Town Meeting, Category 17B of the Town's General Bylaws regulated the "Placement of Fill" on land in Town.

107.   The Spring 2021 amendment to Category 17B of the Town's General Bylaws purports to regulate the "import" to and "placement" of "earth" on land in Town.

108.   Despite its pretextual rationale, the sole reason that the BOS presented amended Category 17B of its General Bylaws to Town Meeting was to provide the BOS with the 'work-around' ability to regulate the future use of the Property for the Project, by providing it the plenary power to deny the Plaintiffs the ability to supply the future facility with the necessary raw materials it will require to operate.

109.   The pretextual and arbitrary nature of Category 17B of the Town's General Bylaws is clear on its face given the fact that, on one hand, it requires a permit be acquired from the BOS to import all earth material or construction and demolition debris in excess of thirty (30) yards, while on the other hand, excepting commercial landscapers and landscaping and gardening centers from this requirement.

110.    In that regard, if the Town was really concerned about the 'import' of those materials and the effect it may have on the public's health, safety and welfare, then commercial landscapers and landscape & garden centers would not be exempted thereby.

111.    Under Category 17B of the Town's General Bylaws as amended, a landscape & garden center in Seekonk would be permitted to import thousands of yards of sand, gravel and/or other earth materials and sell it to any customer without the need for a permit from the BOS, but the customer of that landscape & garden center would be unable to haul more than thirty (30) yards of that material to any given property in Town without first acquiring a permit from the BOS.

112.    During many public meetings and in other fora, members of the BOS have repeatedly stated that they would take all action necessary to 'stop' or 'halt' the Project from moving forward.

113.    During the course of the local proceedings for the Project, members of the BOS made private overtures and demands for Plaintiffs to withdraw the pending applications due to the public opposition that had arisen against the Project or face the consequences.

114.    Plaintiffs refused to withdraw the application and to abandon the Project, prompting the Town to proceed with the retaliatory conduct at issue in this Complaint.

115.    As a direct and proximate result of the Town's deliberate and egregious conduct, the Plaintiffs' have sustained significant damages and irreparable harm.

## COUNT I
### Violation of 42 U.S.C. § 1983
### First Amendment Retaliation – Right to Petition Pursuant to 1st Amendment to the Constitution of the United States Plaintiffs 45 Industrial and IPC against all Defendants

116.    Plaintiffs restate and incorporate by reference the factual allegations of paragraphs 1– 115 of this Complaint as if fully set forth herein.

117.    By filing the local Site Plan Review Application to the Seekonk Planning Board for the Project, the Approval Not Required Plan Application to the Planning Board for the Property and the State Air Permit Application to the MassDEP for the Project, Plaintiffs engaged in activities consistent with and protected by their right secured by the First Amendment to the United States Constitution to petition the government.

118.    Defendants, including the BOH and BOS, in making various public accusations of Plaintiffs and its Project and in taking other actions designed to interfere with said Project, acted under color of state law.

119.    In retaliation of Plaintiffs' exercise of their First Amendment right to petition, Defendants (each being either the governmental entity or decision-making officers and/or employees of the Town),  maliciously and in bad faith sought to obstruct, hinder, delay and deny Plaintiffs' ability to utilize its Property by way of developing the Project and to punish them for not agreeing to withdraw the pending applications for the Project and to abandon the same.

120.    As a result of the Defendants' retaliatory actions set forth in Paragraphs 9-114 of this Complaint, Plaintiffs' have sustained significant damages and irreparable harm.

121.    Plaintiffs' exercise of their First Amendment rights to petition the government was a substantial and motivating factor in Defendants' retaliatory and unconstitutional actions and conduct.

122.    Defendants' retaliatory conduct (as described in this Complaint) was an effort by them to quell and/or chill Plaintiffs' present and future exercise of their First Amendment rights to petition the government.

123.    As a direct and proximate result of Defendants' retaliatory conduct and the resultant deprivation of Plaintiffs' constitutional right to petition secured by the First Amendment to the

United States Constitution pursuant to 42 U.S.C. § 1983, Plaintiffs have been harmed and are accordingly entitled to compensatory, presumed, exemplary, and/or punitive damages.

**WHEREFORE**, Plaintiffs seek all damages provable at trial, appropriate equitable relief, plus interest, costs and reasonable attorney fees.

**COUNT II**
**Violation of 42 U.S.C. § 1983 – First Amendment Retaliation – Freedom of Speech**
**Pursuant to 1st Amendment to the Constitution of the United States – Plaintiffs 45**
**Industrial and IPC Against All Defendants**

124.   Plaintiffs restate and incorporate by reference the factual allegations of paragraphs 1– 123 of this Complaint as if fully set forth herein.

125.   By filing the local Site Plan Review Application to the Seekonk Planning Board for the Project, the Approval Not Required Plan Application to the Planning Board for the Property and the State Air Permit Application to the MassDEP for the Project and by speaking in favor of the Project at public hearings, through news media and through other mediums, Plaintiffs engaged in activities consistent with and protected by their right secured by the First Amendment to the United States Constitution to free speech.

126.   In retaliation of Plaintiffs' exercise of its First Amendment right to freedom of speech, Defendants (each being either the governmental entity or decision-making officers and/or employees of the Town), maliciously and in bad faith sought to obstruct, hinder, delay and deny ability to utilize its Property by way of developing the Project and to punish them for not agreeing to withdraw the pending applications for the Project and for speaking in favor of the same.

127.   As a result of the Defendants' retaliatory actions set forth in Paragraphs 9-114 above, Plaintiffs' have sustained significant damages and irreparable harm.

128.    Plaintiffs' exercise of their First Amendment rights to freedom of speech was a substantial and motivating factor in Defendants' retaliatory and unconstitutional actions and conduct.

129.    Defendants' retaliatory conduct (as described in this Complaint) was an effort by them to quell and/or chill Plaintiffs' present and future exercise of their First Amendment rights to free speech and to force Plaintiffs to abandon the Project.

130.    As a direct and proximate result of Defendants' retaliatory conduct and the resultant deprivation of Plaintiffs' constitutional right freedom of speech secured by the First Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983, Plaintiffs have been harmed and are accordingly entitled to compensatory, presumed, exemplary, and/or punitive damages.

**WHEREFORE**, Plaintiffs seek all damages provable at trial, appropriate equitable relief, plus interest, costs and reasonable attorney fees.

## COUNT III
### Declaratory Judgment pursuant to 28 U.S.C. § 2201 and M.G.L. c. 231A § 1 *et seq.* – Section 17B of the Seekonk General Bylaws Is Unconstitutional As-Enacted and As-Applied

131.    Plaintiffs repeat and incorporate the allegations of paragraphs 1-130 of this Complaint as if fully set forth herein.

132.    The Town has stated that it is going to require Plaintiffs to obtain an earth import permit from the BOS before commencing operations for the Project.

133.    Section 17B of the General Bylaws was enacted with the unconstitutional discriminatory purpose(s) of singling out Plaintiffs and disparately classifying them into a 'class of one', as well as to further retaliate against 45 Industrial and IPC for exercising their constitutionally protected First Amendment rights to freedom speech and to petition the

government, as well as to strip them of their Property rights as protected by the 5th and 14th Amendments.

134.    Members of the BOS have acknowledged that Section 17B was enacted in order to effectively block the Project from ever coming to fruition.

135.    Section 17B of the General Bylaws bears no rational relationship to any legitimate health, safety and welfare concerns for the residents of Seekonk.

136.    This is evident from a plain reading of the Section 17B, which permits landscaping businesses who import, store, sell and use large amounts of earth materials and construction demolition debris onsite and in other locations in Town without requiring a permit from the BOS.

137.    Section 17B also permits big box retailers such as Home Depot and Lowes to likewise, import, store, sell and transport/deliver large amounts of earth materials and construction and demolition debris in other locations in the Town without requiring a permit from the BOS.

138.    For example and without limitation, Section 17B would permit any landscaping company or big box retailer located in Seekonk to accept delivery of hundreds or thousands of cubic yards of loam, sand, processed asphalt, gravel, recycled concrete/aggregate in Seekonk and then sell/deliver/install those same hundreds of yards of earth materials at a customer's residence or business also located in Seekonk (irrespective of zoning district), without a permit from the BOS.

139.    To the contrary, as enacted, Section 17B would require Plaintiffs to procure a plenary earth import permit from the BOS in order to import and deposit more than thirty (30) cubic yards of sand, processed asphalt, recycled concrete/aggregate and gravel, 'during any period of time' to and on its Property (which is located in the Industrial Zoning District).

140.    The purpose and practical effect of the enactment of Section 17B is to provide the BOS a plenary mechanism to effectively deprive Plaintiffs the ability to supply their future facility with the base products it needs to manufacture asphalt.

141.    Section 17B as amended is unreasonable, arbitrary and capricious and bears no rational relationship to any legitimate governmental interest.

142.    Section 17B as enacted constitutes a clear abuse of governmental power at Plaintiffs' expense.

143.    Upon information and belief, since its enactment in 2021, no Seekonk resident, property owner or business has been required to obtain an earth import permit under Section 17B.

144.    As a direct and proximate result of the Town's conduct, Plaintiffs have suffered significant damages and irreparable harm.

**WHEREFORE**, Plaintiffs seeks relief from this Honorable Court ordering as follows:

a.    Issuance of a Declaratory Judgment that Section 17B of the General Bylaws as amended is facially unconstitutional;

b.    Issuance of a Declaratory Judgment that Section 17B of the General Bylaws as amended is unconstitutional as applied;

c.    Issue a preliminary, permanent and/or mandatory injunction against the Town precluding it from enforcing Section 17B against Plaintiffs;

d.    Award Plaintiffs all damages provable at trial; and

e.    Any other relief that this Court may deem just and equitable.

## COUNT IV
### Violation of 42 U.S.C. § 1983 – Substantive Due Process Pursuant to the Fifth and Fourteenth Amendments to the United States Constitution – Plaintiffs Against All Defendants

145.    Plaintiffs restate and incorporate by reference the factual allegations of paragraphs 1-144 of this Complaint as if fully set forth herein.

146.    It is a fundamental right held by Plaintiffs, IPC and 45 Industrial to petition State and local agencies for the various land use and environmental permits necessary to construct and operate the Project on the Property.

147.    It is a fundamental right held by Plaintiffs, IPC and 45 Industrial to speak in favor of the Project before State and local agencies, the media and other public forums.

148.    It is a fundamental right held by Plaintiffs to utilize their Property and operate their business as they are lawfully entitled to, without risk of their property rights being arbitrarily and erroneously stripped by the Town.

149.    By virtue of the Planning Board's Site Plan Review approval for the Project and the zoning 'use freeze' afforded by M.G.L c. 40A § 6 following endorsement of the ANR Plan for the Property, Plaintiffs' acquired vested property rights to construct the plant on the Property.

150.    At all times material hereto, the Town of Seekonk (inclusive of its Boards, Commissions and decision makers) knew that the Project was a use that was permitted by right in the Industrial Zoning District.

151.    At all times material hereto, the Town of Seekonk (inclusive of its Boards, Commissions and decision makers) knew that having received ANR Endorsement on a plan, that the Property had received a three (3) year zoning 'use freeze' as of February 9, 2021, pursuant to M.G.L. c. 40A § 6.

152.    Accordingly, the Town's BOS, BOH and other decision makers, including Hoch of the Planning Board, engaged in a concerted effort and campaign of unlawful conduct that was expressly designed to (1) retaliate against Plaintiffs and punish them for petitioning State and local agencies for land use and environmental permits associated with the Project; (2) retaliate against Plaintiffs and punish them for speaking in favor of the Project at public hearings, in the media and

in other public forums; and (3) to purposefully circumvent the zoning protections afforded to Plaintiffs by the Massachusetts General Laws, the Seekonk Zoning Bylaws and the Seekonk General Bylaws in order to deny them the ability to develop and utilize their Property for a use that was permitted by right under local Zoning Bylaws and vested as such under Chapter 40A of the Massachusetts General Laws.

153.    The Defendants violated Plaintiffs' substantive due process rights relative to enacting the Noisome Trade Regulation for all the reasons set forth herein, in particular those alleged in Paragraphs 9-114, *supra*.

154.    The Defendants violated the Plaintiffs' substantive due process rights relative to enacting the amendments to Category 17B of the General Bylaws for all the reasons set forth herein, in particular those alleged in Paragraphs 9-114, *supra*.

155.    The Defendants violated the Plaintiffs' substantive due process rights by virtue of their deliberate, malicious and unconstitutional conduct set forth in this Complaint.

197.    The egregious conduct exhibited and actions taken by the Defendants were done knowingly, intentionally, and were not subject to any privileged official conduct.

198.    The Defendants' actions constituted gross misconduct shocking the judicial conscience, were arbitrary and capricious, and are violative of Plaintiffs' substantive rights under the due process clause of the Fifth Amendment, as applied to the states under the Fourteenth Amendment to the United States Constitution through 42 U.S.C. § 1983.

199.    The Defendants' actions and conduct alleged in this Complaint were legally irrational.

200.    The Defendants' actions and conduct alleged in this Complaint are extreme, truly outrageous, uncivilized, intolerable and truly stunning.

201.    The Defendants' actions and conduct alleged in this Complaint demonstrate an overall corrupt process utilized in concert by Town Boards, Commissions and Decision Makers to retaliate against Plaintiffs' for exercising their constitutionally protected rights and to strip Plaintiffs of their constitutionally protected property rights.

202.    Upon belief, Defendants John Does 1-10, Jane Roes 1-10, and XYZ Corporations 1-10 have contributed, assisted, or aided Defendants in their deprivation of Plaintiffs' constitutional rights (as described herein).

203.    As a direct and proximate result of such Defendants' violation of the substantive due process rights, Plaintiffs have suffered, and continue to suffer substantial monetary damages as well as irreparable harms.

**WHEREFORE**, Plaintiffs seek all damages provable at trial, appropriate equitable relief, plus interest, costs and reasonable attorney fees.

<u>**JURY DEMAND**</u>

Plaintiffs hereby demand a trial by jury on all counts so triable.

Respectfully Submitted

45 INDUSTRIAL, LLC, *et al*

Plaintiffs,
By and through their attorneys,

Dated:  April 25, 2023          /s/ Eric S. Brainsky

Eric S. Brainsky (BBO#663136)
Michael E. Levinson (BBO#666108)
Brainsky Levinson, LLC
1543 Fall River Avenue, Suite 1
Seekonk, MA 02771
Ph:     (508) 557-1910
Fax:    (508) 557-1905
ebrainsky@brainskylevinson.com
mlevinson@brainskylevinson.com